

# NUMBER 13-19-00472-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

JORGE GARZA,                                                                          Appellant,

v.

THE STATE OF TEXAS,                                                                  Appellee.

### On appeal from the 139th District Court
### of Hidalgo County, Texas.

# MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Hinojosa and Silva**
**Memorandum Opinion by Justice Silva**

Appellant Jorge Garza appeals his conviction of driving while intoxicated (DWI),

third or more, a second-degree felony.[1] *See* TEX. PENAL CODE ANN. § 49.09(b)(2). By three

---

[1] Garza pleaded true to a prior felony conviction, which enhanced the third-degree felony DWI to a second-degree felony. *See* TEX. PENAL CODE ANN. § 12.42(a).

issues, Garza argues (1) the trial court abused its discretion in allowing the State to introduce his medical records, which contained a toxicology report; (2) the trial court committed structural error in permitting the State to re-open its case-in-chief after it had rested; and (3) the cumulative harm caused by these errors necessitates a reversal. We affirm.

## I. BACKGROUND

On October 22, 2018, Garza was arrested for DWI and evading arrest with a vehicle. Garza was indicted on November 27, 2018, pleaded not guilty, and proceeded to trial.

At trial, Alfredo Ortiz, a police officer with the Pharr Police Department, testified that Garza failed to make a complete stop at an intersection. Ortiz activated his patrol unit lights, but Garza continued to travel at a "slow speed" for a "block and a half." Ortiz notified Garza the reason for the stop upon first making contact. When Ortiz requested that Garza retrieve his driver's license or identification card, Garza refused to identify himself and claimed he did not have a driver's license. Ortiz "automatically saw" a sixteen-ounce Bud Light can "laying in plain view . . . on the passenger floorboard with alcohol spilling out of it." Garza also had "green leafy residue on his clothing" and a "pipe in the center console in plain view as well." Ortiz testified that Garza was "sweating profusely," had "bloodshot red" eyes, and slurred his words when he spoke. Ortiz asked Garza to exit the vehicle so that he could conduct a field sobriety test, and Garza declined. According to Ortiz, the following ensued:

> I asked him two more times. He still refused. Therefore, I had to take the next step which is to physically get him out of the vehicle. . . . I tried to grab him by the arm to pull him out[,] but I couldn't because he ended up putting the vehicle in drive and trying to drive away.

2

. . . .

>I had to deliver two—I believe, it was two elbow strikes to his nose to be able to get his hand off the shift stick. And once he removed his hand[,] I was able to put the vehicle in park.

Ortiz stated that, at the time, his body was partially inside Garza's vehicle. "I was basically on top of his lap while we were struggling," said Ortiz, who added that during this encounter, the odor of alcohol was prominent.[2] Ortiz then attempted to use his radio to request additional assistance and said Garza used the opportunity to "put[] the vehicle in reverse and accelerate[] the vehicle again." Ortiz said he had to once more execute two elbow strikes to Garza's face before he "was able to take out the key and shut off the vehicle."

Additional officers arrived and assisted Ortiz in getting Garza out of the vehicle. Garza was placed in handcuffs. Ortiz read Garza *Miranda* warnings, and Garza responded by saying, "'[F]-ck you. I don't care. I don't give a sh-t. I'm not going to do anything.'" Officers Juan Contreras and Ricardo Monreal transported Garza to the police station and each described Garza as combative, said Garza screamed profanities, and claimed Garza's breath smelled of alcohol. Ortiz testified that emergency medical services were called to meet officers at the police station because Garza had sustained "some scrapes to the top of his head and nose."

During trial, the State moved to admit Garza's medical records and attached a business records affidavit. Garza objected, arguing the records were "highly prejudicial," contained hearsay, and violated his "ability to confront and cross-examine." The trial court

---

[2] Video recordings from Ortiz's vehicle dash camera and body camera were also admitted into evidence. The recordings depict a brief struggle, wherein Ortiz asks Garza to exit the vehicle, and Garza twice visibly attempts to drive away while Ortiz is partially in the vehicle.

overruled Garza's objections and admitted the records. The medical records spanned over 100 pages and contained a toxicology report, which indicated that Garza had tested positive for benzodiazepine and cocaine; the exact levels of which were not present in the report.

Soon after, outside of the presence of the jury, the State moved to rest its case-in-chief. The trial court interjected, asking whether the State was "sure" it "want[ed] to rest." The trial court inquired as to whether Garza had stipulated to his prior DWI convictions listed in the indictment, observing that the State had not presented evidence of any prior convictions. The State argued that defense counsel had stipulated to the prior DWI convictions on Garza's behalf at the start of trial. The court said it was "very concerned" that the State was incorrect that such a stipulation was binding, and the State then requested a quick break to confer with its appellate department before resuming discussions on the record:

| | |
|---|---|
| THE COURT: | Did you check with your appellate department? |
| [State]: | Yes, Your Honor. |
| THE COURT: | And did they say that the attorney can bind the Defendant? |
| [State]: | No, Your Honor. I would like to reopen the case under Article 36— |
| THE COURT: | I thought you said that he—that the appellate department said that he could bind him because you relied on it or something like that. You were saying that, right? |
| [State]: | I can rely on the Defense attorney. |
| THE COURT: | Wow. So when you have a repeater count or a habitual—let's say you're alleging two prior felony convictions in one, how can the attorney bind the Defendant? The Defendant has to make that |

4

| | |
|---|---|
| | declaration, okay. And then you read the enhancement anyway. He ple[]d guilty but he didn't plead that they were true, okay. That's where the issue is. So what's your request? |
| [State]: | My request is to reopen the State's case, Your Honor, in the interest of justice under Article 36.02[3] testimony at anytime—the Court shall allow testimony to be introduced at anytime before— |
| THE COURT: | Do you think that [defense counsel] has a competing— that [defense counsel] have a competing interest of justice, do you think? |

Garza lodged an unspecific objection,[4] and the trial court ultimately allowed the State to reopen its case, noting it was "not very happy about it because [it] asked [the State] numerous times" if it was sure it was ready to rest.

The State then called a latent print examiner to examine Garza's prints and compare them to those from booking sheets from Garza's two prior DWI arrests and the corresponding judgments. Exhibits admitted at trial indicate: Garza was booked for DWI on June 3, 2015, and convicted on June 16, 2015; Garza was booked for DWI, third or more, on April 13, 2016, and convicted and sentenced to two years' incarceration on August 8, 2016.

---

[3] "The court shall allow testimony to be introduced at any time before the argument of a cause is concluded, if it appears that it is necessary to a due administration of justice." TEX. CODE CRIM. PROC. ANN. art. 36.02.

[4] The extent of Garza's objection on the record is as follows:

| | |
|---|---|
| [Garza]: | Your Honor, of course, I have to object and— |
| THE COURT: | You have to |
| [Garza]: | —in the interest of my client as far as to do the defense to the best of my ability. I mean I can't—I mean[,] clearly I know what was said in the reading of the charge. And he said, not guilty. But I know he didn't say true or not true. |

5

As his sole witness, Garza called his sister, Priscilla Garza, to testify. Pricilla testified that the day before Garza's arrest, the family was celebrating a birthday. Priscilla said although she had been drinking, Garza "never drank that night." During cross-examination, Priscilla testified it would surprise her to learn that Garza was "caught with an open contain[er] of Bud Light" and "drugs" the night of his arrest.

During deliberations, the jury sent back several notes. The last two notes collectively indicated the jury had not reached a unanimous verdict on count one, evading arrest, but had reached a unanimous verdict for count two, DWI. The State proposed proceeding on count two and the trial court declaring a mistrial on count one. Defense counsel was in agreement. The trial court then granted a mistrial as to count one. The jury returned a guilty verdict for count two. Following a trial on punishment, Garza was sentenced to four years' incarceration. This appeal followed.

## II. MEDICAL RECORDS

By his first issue, Garza argues that the trial court abused its discretion in admitting his medical records, which included toxicology lab results from his stay at the hospital shortly following his arrest. Specifically, Garza contends the trial court erred in overruling his objections on the following grounds: Rule 404(b), hearsay, and the Confrontation Clause. *See* U.S. CONST. amend. VI; TEX. R. EVID. 404, 802.

### A. Standard of Review

We review a trial court's ruling on the admission of evidence for an abuse of discretion. *Wells v. State*, 611 S.W.3d 396, 427 (Tex. Crim. App. 2020); *Patterson v. State*, 606 S.W.3d 3, 33 (Tex. App.—Corpus Christi–Edinburg 2020, pet. ref'd). A trial court abuses its discretion when its decision lies outside the "zone of reasonable disagreement." *Wells*, 611 S.W.3d at 427; *Patterson*, 606 S.W.3d at 33.

6

**B. Rule 404(b)**

Although Garza asserts a challenge under Rule 404(b) on appeal, Garza made no such objection before the trial court.[5] *See* TEX. R. EVID. 404(b) ("Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character"). Even assuming Garza's trial argument that the evidence was "highly prejudicial" was in reference to Rule 403, Garza does not assert a Rule 403 challenge on appeal. *See id.* R. 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice . . . ."). Moreover, each rule serves a different purpose. *Compare id.* R. 403 *with id.* R. 404. A Rule 403 objection is not implicitly contained in a Rule 404 objection, and objections under either Rule 403 or Rule 404 would not be interchangeable. *See* TEX. R. APP. P. 33.1; *Berry v. State*, 233 S.W.3d 847, 857 (Tex. Crim. App. 2007) (holding a Rule 403 objection was not preserved where only a Rule 404 objection was raised); *see generally Camacho v. State*, 864 S.W.2d 524, 533 (Tex. Crim. App. 1993) (requiring objection specificity for appellate review); *see also De La Rosa v. State*, No. 13-18-00537-CR, 2020 WL 2610936, at *8 (Tex. App.—Corpus Christi–Edinburg May 21, 2020, pet. ref'd) (mem. op., not designated for publication) (holding appellant's Rule 403 argument on appeal had not been preserved where he objected under Rule 404); *Ross v. State*, No. 06-18-00174-CR, 2019 WL 2292335, at *3 (Tex. App.—Texarkana May 30, 2019, pet. ref'd) (mem. op., not

---

[5] Garza argued, in relevant part:

Your Honor, I'm going to object, first of all, that it's highly prejudicial, and there is a ton of hearsay. It's all hearsay in here. Secondly, if they're going to offer it as far as to the jury to proceed with this being offered for the truth of the matter, none of those tests have—there has been no scientific evidence from the stand to suggest that any of those tests have been in one way calibrated or checked or backed up by scientific evidence . . . .

designated for publication) (holding appellant failed to preserve his Rule 404(b) argument for appeal where he only raised a Rule 403 argument at trial). Thus, Garza has failed to preserve this argument for review. *See* TEX. R. APP. P. 33.1(a).

## C. Hearsay

Garza also objected to the admission of his medical records on the basis of hearsay.[6] *See* TEX. R. EVID. 801. Hearsay is a written or oral statement, other than one made by the declarant while testifying at the trial or hearing, offered into evidence to prove the truth of the matter asserted; and as such, hearsay is inadmissible evidence unless expressly excepted or excluded from this general rule by statute or the rules of evidence. *See* TEX. R. EVID. 801(a), (d), 802. "If the out-of-court statement is relevant only if the trier of fact believes that the statement was both truthful and accurate, then the statement is hearsay." *Coble v. State*, 330 S.W.3d 253, 290 n.101 (Tex. Crim. App. 2010) (quoting *Bell v. State*, 877 S.W.2d 21, 24 (Tex. App.—Dallas 1994, pet. ref'd)); *Jones v. State*, 466 S.W.3d 252, 263 (Tex. App.—Houston [1st Dist.] 2015, pet. ref'd). There are, however, a number of exceptions to the hearsay rule. *See* TEX. R. EVID. 803; *Castillo v. State*, 573 S.W.3d 869, 877 (Tex. App.—Houston [1st Dist.] 2019, pet. ref'd); *see also White v. State*, 549 S.W.3d 146, 160 (Tex. Crim. App. 2018) (Keller, P.J., concurring) ("For hearsay, . . . which is a rule of exclusion, we have held that the opponent of the evidence bears the burden to show that evidence is hearsay, but once hearsay is shown, the

---

[6] Though Garza additionally briefly objected to "double hearsay" at trial, Garza does not assert a hearsay within hearsay claim on appeal. *See Sanchez v. State*, 354 S.W.3d 476, 485–86 (Tex. Crim. App. 2011) ("When hearsay contains hearsay, the Rules of Evidence require that each part of the combined statements be within an exception to the hearsay rule."); *see also* TEX. R. EVID. 805 ("[h]earsay within hearsay is not excluded by the rule against hearsay if each part of the combined statements conforms with an exception to the rule").

proponent bears the burden of establishing an exemption or exception to the hearsay rule.").

Rule 803(6), commonly known as the "business records exception," allows the admission of certain memoranda, reports, records, or data compilations that are: (1) made at or near the time of the events they record, by or from information transmitted by a person with knowledge of the events; and (2) made and kept in the course of a regularly conducted business activity. Tex. R. Evid. 803(6). The necessary predicate for introduction of a business record may be shown by offering either (1) the testimony of a records custodian or other qualified witness, or (2) an affidavit that complies with Rule 902(10). *See* Tex. R. Evid. 803(6), 902(10).

In the instant case, the trial court admitted the medical records pursuant to Rule 803 because the State had filed its Rule 803 notice, the affidavit was in compliance with the statute, and Garza had not objected to the medical records under Rule 803(6)(e). Both parties acknowledged the existence of the self-authenticating affidavit in connection with appellant's medical records, and the affidavit was admitted as part of the medical records exhibit at trial. *See* Tex. R. Evid. 803(6), 902(10). Therefore, under the "business records exception" of Rule 803(6), appellant's medical records were admissible. *See* Tex. R. Evid. 803(6), 902(10); *Knapp v. State*, 942 S.W.2d 176, 180 (Tex. App.—Beaumont 1997, pet. ref'd); *see also Canales v. State*, No. 13-16-00252-CR, 2018 WL 2252719, at *5 (Tex. App.—Corpus Christi–Edinburg May 17, 2018, pet. ref'd) (mem. op., not designated for publication).

Additionally, pursuant to Rule 803(4), statements made for the purpose of medical diagnosis or treatment are admissible as an exception to the hearsay rule. *See* Tex. R. Evid. 803(4). The record demonstrates that Garza was transported to the hospital after

9

receiving several injuries during his arrest. The medical records reflect the hospital staff's diagnosis and treatment for facial lacerations and contusions, which included the administration of medicine intravenously. Although there is a toxicology report contained therein, the report also contains the following notice provision:

> These screening tests are for medical use only. This urine drug screen method provides only a preliminary analytical test result. A more specific alternate chemical method must be used in order to obtain a confirmed analytical result. Gas chromatography/mass spectrometry (GC/MS) is the preferred confirmatory method. Physicians should exercise clinical consideration and professional judgment applied to any drug of abuse test result, particularly when preliminary positive results are used to render treatment or to monitor progress of medical conditions. Confirmatory testing may be performed at physician's request.

The blood test performed at the hospital was conducted for treatment purposes. *See id.*

Therefore, we conclude that the trial court did not abuse its discretion by admitting the medical records, and we overrule Garza's objections to the admission of this evidence on this basis. *See Weatherred v. State*, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000) ("[T]he appellate court must review the trial court's ruling in light of what was before the trial court at the time the ruling was made."); *see also Canales*, 2018 WL 2252719, at *5.

### D.    Confrontation Clause

Garza next contends that his rights under the Confrontation Clause were violated because he had no opportunity to confront and cross-examine the medical personnel who performed the test and reported the results. *See* U.S. CONST. amend. VI.

"Under the Confrontation Clause of the Sixth Amendment of the United States Constitution, made applicable to the states through the Fourteenth Amendment, 'in all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him.'" *Burch v. State*, 401 S.W.3d 634, 636 (Tex. Crim. App. 2013) (quoting *Pointer v. Texas*, 380 U.S. 400, 403 (1965)); *see* U.S. CONST. amend. VI. We

10

address a Confrontation Clause challenge by asking: (1) whether the defendant had a prior opportunity to cross-examine the absent declarant, and (2) whether the statement at issue is testimonial in nature. *Crawford v. Washington*, 541 U.S. 36, 59 (2004); *Coronado v. State*, 351 S.W.3d 315, 323 (Tex. Crim. App. 2011).

A general hearsay objection does not preserve a Confrontation Clause complaint for appeal. *See Reyna v. State*, 168 S.W.3d 173, 179 (Tex. Crim. App. 2005) (noting that appellant's "arguments about hearsay did not put the trial judge on notice that he was making a Confrontation Clause argument" and finding that appellant waived the latter because "the trial judge never had the opportunity to rule upon this rationale"); *Martinez v. State*, 91 S.W.3d 331, 335–36 (Tex. Crim. App. 2002) (noting that, for an issue to be preserved on appeal, the issue on appeal must comport with the objection made at trial); *see also* TEX. R. APP. P. 33.1(a).

Assuming but not deciding that the issue has been preserved, we find it lacks merit. Business records are generally not testimonial because they are created for the administration of an entity's affairs and not for the purpose of establishing or proving some fact at trial. *Melendez–Diaz v. Massachusetts*, 557 U.S. 305, 324 (2009). Likewise, medical records created for treatment purposes are not testimonial. *See id.* at 312 n. 2 (noting that "medical reports created for treatment purposes . . . would not be testimonial under our decision today"); *Berkley v. State*, 298 S.W.3d 712, 715 (Tex. App.—San Antonio 2009, pet. ref'd) (holding medical records were non-testimonial); *Sullivan v. State*, 248 S.W.3d 746, 750 (Tex. App.—Houston [1st Dist.] 2008, no pet.) (observing that numerous Texas courts have held that medical reports and business records are non-testimonial in nature); *see also Harding v. State*, No. 13-14-00090-CR, 2015 WL

6687287, at *6–7 (Tex. App.—Corpus Christi–Edinburg Oct. 29, 2015, pet. ref'd) (mem. op., not designated for publication) (same).

As noted *supra*, because the blood test performed at the hospital was conducted for treatment purposes, the hospital's lab report was nontestimonial. We find no statements in the medical records that would constitute testimonial statements, and appellant has failed to identify any such statement. Therefore, the admission of the records did not violate the Confrontation Clause, and the trial court did not abuse its discretion in permitting its admission. *See Sullivan*, 248 S.W.3d at 750; *see also Carpenter v. State*, No. 11-15-00323-CR, 2018 WL 3763773, at *2 (Tex. App.—Eastland Aug. 9, 2018, no pet.) (mem. op., not designated for publication) (holding that, where the only evidence indicated that the medical records were created solely for treatment purposes, the records were not testimonial and did not violate appellant's right to confrontation); *Palacios v. State*, No. 02-09-00332-CR, 2010 WL 4570072, at *5 (Tex. App.—Fort Worth Nov. 4, 2010, no pet.) (mem. op., not designated for publication) (same).

We overrule Garza's first issue.

### III. STRUCTURAL ERROR

By his second issue, Garza argues the trial court "erred in allowing the State to reopen its case after the State had rested and closed," and such action "amounts to a 'structural' error."

A "structural" error "affect[s] the framework within which the trial proceeds, rather than simply an error in the trial process itself" and "render[s] a trial fundamentally unfair." *Jordan v. State*, 256 S.W.3d 286, 290 (Tex. Crim. App. 2008). The denial of an impartial judge is structural error for which no harm analysis is necessary. *See Johnson v. United*

12

*States*, 520 U.S. 461, 468 (1997) (noting that the Court has "found structural errors only in a very limited class of cases"); *Tumey v. Ohio*, 273 U.S. 510 (1927) (holding that the right to an impartial judge is an absolute requirement); *Hernandez v. State*, 268 S.W.3d 176, 184 (Tex. App.—Corpus Christi–Edinburg 2008, no pet.). While both due process and article 38.05 of the Texas Code of Criminal Procedure require a neutral and detached judge, "[a] judge can lawfully provide guidance and manage the presentation of evidence from the bench without abandoning his role as an independent arbiter." *Strong v. State*, 138 S.W.3d 546, 552 (Tex. App.—Corpus Christi–Edinburg 2004, no pet.) (citing TEX. R. EVID. 611(a) ("The court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence.")); *see Grado v. State*, 445 S.W.3d 736, 739 (Tex. Crim. App. 2014).

A similar issue has been before this Court, and we concluded the trial court had not erred. In *Silva v. State*, the trial court "suggest[ed] that additional witnesses be called to meet the State's burden of proof." 635 S.W.2d 775, 778 (Tex. App.—Corpus Christi–Edinburg 1982, pet. ref'd).

> The law requires that judges be impartial and that they not take sides in assisting either side in our adversary system of justice. Can[]on 2(A) of the Code of Judicial Conduct provides that "a judge . . . should conduct himself at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary." These types of remarks by the trial judge reflect unfavorably upon our judicial system and cannot be condoned by us. Their result could have been a reversal of this trial. Whether appellant received a fair trial in light of the comments by the court is a close question. But, we refuse to reverse because the statements were not made in the presence of the jury and arguably all that the judge was doing was managing the trial, including the order of proof. *Laws v. State*, 549 S.W.2d 738 (Tex. Cr[im]. App. 1977). Furthermore, appellant has not convinced us that the State called any witnesses which it would not otherwise have called.

*Id.* As in *Silva*, the trial court's statements here were made outside the presence of the jury, and appellant has not argued that the State called witnesses which it would otherwise

13

have not. *See id.* Unlike *Silva*, where following the trial court's direction, the State proceeded to call nine witnesses not previously subpoenaed, the State's witnesses here—including its fingerprint expert—were provided in a witness list to Garza prior to trial. *See id.* Moreover, a review of this trial record indicates the trial court also made periodic attempts to facilitate the trial via means arguably beneficial to the defense, further undercutting Garza's claims of bias towards the prosecution.[7] *See id.*; *DeBolt v. State*, 604 S.W.2d 164, 166 (Tex. Crim. App. 1980) (concluding that error, if any, was harmless when the trial court instructed the prosecutor as to the proof required to lay a predicate for the introduction of an autopsy report); *Howard v. State*, 766 S.W.2d 907, 908 (Tex. App.—Fort Worth 1989, no pet.); *Silva*, 635 S.W.2d at 778; *see also Dacus v. State*, No. 08-08-00026-CR, 2010 WL 546691, at *4 (Tex. App.—El Paso Feb. 17, 2010, pet. ref'd) (mem. op., not designated for publication) ("[E]ven if the trial court's comment can be interpreted to show some type of bias, because the comment was made outside the presence of the jury, there is no harmful error."); *Moore v. State*, No. 04-97-00275-CR, 1998 WL 877483, at *2 (Tex. App.—San Antonio Dec. 16, 1998, pet. ref'd) (mem. op., not designated for publication) (holding that the "trial court's comment indicating that the State should introduce evidence to prove" an element of the offense was "not an effort by the trial judge to assist the State in meeting its burden, but only an effort to move the case along" where the appellant did not show that the State introduced any evidence that it would not have introduced otherwise). Under these circumstances, we conclude the trial court did not err.

---

[7] For example, the trial court pointed defense counsel to a specific rule of evidence when defense was attempting to object under an incorrect rule.

Further, to the extent that Garza argues the trial court abused its discretion in permitting the State to reopen its case, we observe that Article 36.02 of the Texas Code of Criminal Procedure permits the trial court to "allow testimony to be introduced at any time before the argument of a cause is concluded, if it appears that it is necessary to a due administration of justice." TEX. CODE CRIM. PRO. ANN. art. 36.02; *Peek v. State*, 106 S.W.3d 72, 79 (Tex. Crim. App. 2003) (holding that art. 36.02 grants judges greater discretion and that a "'due administration of justice' means a judge should reopen the case if the evidence would materially change the case in the proponent's favor"); *see, e.g.*, *Moore v. State*, 493 S.W.2d 844, 846 (Tex. Crim. App. 1973) (holding the trial court did not abuse its discretion "in permitting the State to recall two witnesses after the State had rested its case in chief at the punishment stage of the trial"). Garza does not challenge the trial court's implicit finding that the State's evidence was material, and having reviewed the record, we concur with the trial court. *See Peek*, 106 S.W.3d at 79; *see also Herrera v. State*, No. 13-11-00084-CR, 2012 WL 2861673, at *10 (Tex. App.—Corpus Christi–Edinburg July 12, 2012, no pet.) (mem. op., not designated for publication) (concluding the trial court did not abuse its discretion in allowing the State to reopen its case in order to admit testimony that "materially changed the case in the State's favor").

We overrule Garza's second issue.

### IV.    CUMULATIVE ERROR

By his last issue, Garza alleges that the previous alleged errors cumulatively caused him harm, requiring a reversal.

The doctrine of cumulative error provides that the cumulative effect of multiple errors can, in the aggregate, constitute reversible error, even though no single instance of error would. *Chamberlain v. State*, 998 S.W.2d 230, 238 (Tex. Crim. App. 1999); *see*

15

*Jenkins v. State*, 493 S.W.3d 583, 613 (Tex. Crim. App. 2016). However, the Texas Court of Criminal Appeals has held that there is "no authority holding that non-errors may in their cumulative effect cause error." *Gamboa v. State*, 296 S.W.3d 574, 585 (Tex. Crim. App. 2009); *see Jenkins*, 493 S.W.3d at 613; *Temple v. State*, 342 S.W.3d 572, 612 (Tex. App.—Houston [14th Dist.] 2010), *aff'd*, 390 S.W.3d 341 (Tex. Crim. App. 2013) (providing that reviewing courts do not consider the effect of waived errors under the cumulative error doctrine); *see also Escobedo v. State*, No. 13-19-00205-CR, 2020 WL 6052549, at *6 (Tex. App.—Corpus Christi–Edinburg Oct. 8, 2020, no pet.) (mem. op., not designated for publication) (concluding non-errors may not produce harm in their cumulative effect). Because we have found no error in our analysis of Garza's previous issues, there is no error to cumulate, and we overrule Garza's third issue.

## V.   CONCLUSION

We affirm the trial court's judgment.

CLARISSA SILVA
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed on the
4th day of March, 2021.